IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHEVALIEE G. ROBINSON, ) | |
| ) | Civil Action No. 18 – 235J |
| Petitioner, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| V, MOSER, *Warden @ F.C.I. Loretto,* ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**[1]

Petitioner Chevaliee G. Robinson ("Petitioner") is a federal prisoner[2] currently confined at RRM Cincinnati.[3] On January 31, 2018, while confined at Administrative United States Penitentiary ("AUSP") Thomson in Thomson, Illinois,[4] he was issued Incident Report 3084271,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of a final judgment. (ECF Nos. 8, 12.)

[2] Petitioner is currently serving a 180-month prison sentence for Conspiracy to Possess and Distribute Marijuana and Cocaine, Conspiracy to Launder Monetary Instruments and Possession with Intent to Distribute Approximately 1,081 pounds of marijuana. *See* United States v. Robinson, No. 5:07-cr-574 (N.D. Oh. Jan. 23, 2009).

[3] When Petitioner initiated this action in November 2018, he was confined at the Federal Correctional Institution ("FCI") Loretto, which is located within the Western District of Pennsylvania.

[4] Petitioner was designated to AUSP Thomson from December 13, 2017 until May 22, 2018. (Resp't Exh. 1; ECF No. 10-1, p.3.)

1

charging him with Possession of a Hazardous Tool (Cellular Phone), Prohibited Act Code 108.[5] On or about November 20, 2018, Petitioner initiated the instant federal habeas corpus proceeding pursuant to 28 U.S.C. § 2241, challenging the disciplinary hearing process that resulted in certain sanctions, including the loss of vested and non-vested good conduct time. He seeks expungement of the Incident Report and restoration of his good conduct time. Because the Court finds that Petitioner was afforded the full panoply of procedural protections to which he was entitled, his Petition for Writ of Habeas Corpus (ECF No. 4) will be denied.

### A. Disciplinary Hearing Proceedings

According to the Incident Report, on January 4, 2018, at approximately 1:30 p.m., a AUSP Thomson staff member discovered a black LG smart cellular phone hidden in a laundry room at the facility. The phone was sent for a forensic analysis, which revealed that three of the numbers listed in the phone were also on Petitioner's approved telephone list and only his list. One of those three numbers belonged to his ex-wife. It was thus determined that Petitioner had to possess the cell phone in order to call those three numbers, and, as a result, he was charged with Possession of a Hazardous Tool (Cellular Phone), Prohibited Act Code 108, on January 31, 2018 at 11:20 a.m. It is noted that Petitioner was provided with a copy of the Incident Report on January 31, 2018 at 6:50 p.m. (Resp't Exh. 2; ECF No. 10-5, p.13.)

---

[5] Code 108 prohibits the possession, manufacture, introduction, or loss of a hazardous tool. Hazardous tools are defined as "tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device." BOP Program Statement 5270.09, Inmate Discipline, p.44, available at http://www.bop.gov/policy/progstat/5270_009.pdf (last visited August 18, 2020).

An investigation into the incident took place on February 6, 2018.  Id., p. 15.  Petitioner was advised of his rights and stated that he understood them.  Id.  He told investigators that he "was not in possession of the phone" and "never in possession of anything at all."  Id.  He did not request any witnesses.  Id.  The investigator concluded that Petitioner was properly charged with Code 108 and referred the matter to the Unit Discipline Committee ("UDC") for further disposition.  Id.

On February 7, 2018, Petitioner appeared before the UDC and stated that he was "not disputing the phone numbers" but he "did not possess the phone."  Id., p.13.  Due to the severity of the Incident Report, the UDC referred the matter to the Disciplinary Hearing Officer ("DHO") for further disposition.  Id.

On that same date, Petitioner was provided with a form titled "Notice of Discipline Hearing Before the DHO" and a form titled "Inmate Rights at Discipline Hearing," both of which he signed and both of which are dated February 7, 2018.  Id., pp.6-12.  Petitioner indicated on the Notice of Discipline Hearing form that he did not wish to have a staff representative and did not wish to have witnesses at his hearing before the DHO.  Id., p.6.

Petitioner's DHO hearing was held on February 21, 2018 at 10:30 a.m.  Id., p.2.  Petitioner denied the charge and made the following statement:  "I got here on the 13th of December.  I play cards with a couple of people and gave them my contact numbers for business.  This report is not accurate, but I don't dispute they are my numbers."  Id.  The DHO considered the evidence, which included Petitioner's statements, the Incident Report, photographic documentation of the cellular phone, chain of custody log associated with the cellular phone tying it directly to the forensic analysis report provided by the SIS associated with the cellular phone, and the Federal Bureau of Prisons TRUVIEW documentation associated with three phone

3

numbers found in the phone that linked the numbers directly to Petitioner. Id., p.3. At the conclusion of the hearing, the DHO found that the "greater weight of the evidence" supported that Petitioner committed the prohibited act as charged, "even if for a short period of time." Id. The DHO sanctioned Petitioner to 41 days disallowance of Good Conduct Time, the forfeiture of 46 days of non-vested Good Conduct Time, 30 days disciplinary segregation beginning February 21, 2018, and 180 days loss of email and phone privileges beginning February 21, 2018. Id. Petitioner was provided with a copy of the DHO's Report on February 22, 2018 at 1:53 p.m. Id., p.4. He then unsuccessfully appealed the DHO's decision at the regional and national levels. (Resp't Exh. 1; ECF No. 10-1, p.3.)

### B. Discussion

In his Petition for Writ of Habeas Corpus, Petitioner launches a two-fold constitutional assault upon the DHO's disciplinary decision, challenging the disciplinary process generally on procedural due process grounds and asserting that the decision is substantively flawed since there is insufficient evidence to support a finding of misconduct on his part. (ECF No. 4.) Respondent filed an Answer to the Petition on March 20, 2019. (ECF No. 10.) This matter has been fully briefed by the parties and is now ripe for disposition.

#### 1. Procedural Standards Governing Prison Disciplinary Proceedings

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The United States Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) appear before an impartial decision-making body; (2) advance written notice of the disciplinary charges no less than 24 hours before the disciplinary

hearing; (3) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; (4) assistance from an inmate representative, or substitute aid from staff, if the charged inmate is illiterate or if complex issues are involved; and (5) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 564, 566, 570-71.

In the federal prison system, the Bureau of Prisons ("BOP") has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §§ 541.1-541.8. These guidelines are specifically tailored and designed to meet or exceed the due process requirements outlined by the Supreme Court in Wolff, supra. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation.[6] 28 C.F.R. § 541.5(a)-(b). After investigation, the incident report is referred to a UDC, consisting of two or more staff designated by the Warden for an initial hearing.[7] 28 C.F.R. § 541.7(b). The inmate, in turn, is entitled to appear before the UDC during its review of the incident report, except during UDC deliberations or when the inmate's presence would jeopardize institution security, and the inmate is entitled to make a statement and present documentary evidence. 28 C.F.R. § 541.7(d)-(e). The UDC may either reach a finding regarding whether a prohibited act was committed or refer the case to the DHO

---

[6] The inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident." 28 C.F.R. § 541.5(a).

[7] "The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays. UDC review of the incident report may also be suspended if it is being investigated for possible criminal prosecution." 28 C.F.R. § 541.7(c).

for further hearing.[8]  28 C.F.R. § 541.7(f)-(g).  The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act.  28 C.F.R. § 541.8(a).  The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8.

Throughout this hearing process, the inmate is provided with a series of procedural rights.  For example, the inmate is entitled to notice of the alleged infraction.  Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing.  28 C.F.R. § 541.8(c).  The inmate is also entitled to assistance at DHO hearings, if so desired.  In particular, if requested, the Warden must provide the inmate with a staff member to represent him at the DHO hearing.  28 C.F.R. § 541.8(d).

The inmate also has a series of procedural rights at the hearing itself.  The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized.  28 C.F.R. § 541.8(e).  The inmate is also entitled to make a statement and present documentary evidence.  28 C.F.R. § 541.8(f).  The inmate also has the right to submit names of requested witnesses and have them called to testify.  28 C.F.R. § 541.8(f).  While the DHO need not call repetitive witnesses or adverse witnesses, the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available.  28 C.F.R. § 541.8(f)(2)-(3).

In addition, the regulations prescribe procedural standards for DHO decision-making.  The regulations require that the DHO must consider all evidence presented at the hearing.  28

---

[8] If the UDC finds that a prisoner has committed a prohibited act then it may impose minor sanctions.  28 C.F.R. § 541.7(f).  However, if the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing.  28 C.F.R. § 541.7(a)(3)-(4).

C.F.R. § 541.8(f).  The decision of the DHO must be based on "at least some facts", and if there is conflicting evidence, it must be based on the "greater weight of the evidence."  28 C.F.R. § 541.8(f).  Finally, the DHO must prepare a record of the proceedings.  28 C.F.R. § 541.8(h).  This record must be sufficient to document the advisement of inmate rights, the DHO's decision and the specific evidence relied upon by the DHO.  28 C.F.R. § 541.8(h)(1)-(3).  The record must also include the sanction imposed and a rationale for the imposed sanction.  28 C.F.R. § 541.8(h)(4)-(5).  A copy of this record must be delivered to the inmate.  28 C.F.R. § 541.8(h).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations, they fully satisfy the requirements of procedural due process in this prison disciplinary setting.  *See*, *e.g.*, Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007) (same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006) (same).

Judged against these standards, Petitioner's procedural challenges to his prison disciplinary proceedings simply fail.  In this case, the record reflects that the DHO followed the procedures outlined in the regulations and afforded Petitioner the procedural protections required by Wolff.  Specifically, Petitioner was given a copy of the Incident Report, which provided him with notice of the charge against him, on January 31, 2018 at 6:50 p.m.  This was well in advance of his disciplinary hearing before the UDC on February 7, 2018 and the DHO on February 21, 2018, as called for in Wolff.  Also in accordance with Wolff, Petitioner was offered, but declined, assistance from a representative and the opportunity to call witnesses and present documentary evidence on his behalf.  He was present throughout and participated in the hearing, which was before an impartial decision making body, and he ultimately received a copy

of the DHO's Report, which included a statement that outlined the reasons why he found Petitioner committed the prohibited act, as well as the reasons why the sanctions were imposed. Given that Petitioner was afforded the minimum procedural protections set forth in Wolff, the Court finds that the DHO fully satisfied the requirements of due process in this case.

### 2. Substantive Standards Governing DHO Decisions

The Court also finds that there was "some evidence" to support the finding of the DHO. In this regard, a prison disciplinary determination comports with due process if it is based on "some evidence." *See* Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. *See* id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48, 51 (3d Cir. 1992); Thompson, 889 F.2d at 501. Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d at 501; Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986).

Here, there was "some evidence" to support the DHO's finding that Petitioner committed the prohibited act. The cell phone was found in a common area and sent for forensic analysis. That analysis showed that three numbers on the phone appeared only on Petitioner's approved

telephone list, including one belonging to his ex-wife. Petitioner did not dispute that the numbers matched those on his approved list, only that he used or possessed the phone, but his argument that he shared those numbers with someone else who put them in the phone was not corroborated by any supporting testimony or evidence. Thus, the DHO reasonably concluded that Petitioner committed the prohibited act and his decision comports with the minimum requirements of procedural due process standards.

### 3. Sanctions

Petitioner appears to argue that the DHO lacked the authority to impose the sanction that disallowed his good conduct time.

Pursuant to 28 C.F.R. § 523.20(c), the BOP will award inmates serving a sentence for an offense committed on or after April 26, 1996, either: (1) 54 days credit for each year served, if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or (2) 42 days credit for each year served, if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma. That time, however, is subject to disciplinary disallowance. 28 C.F.R. § 523.20(e).

Inmates who commit a Greatest Severity Level prohibited act,[9] like Code 108, face a variety of possible sanctions. Specifically with regard to good conduct time, these sanctions include: (1) forfeiture and/or withholding of earned statutory good conduct time or non-vested good conduct time (up to 100%); (2) termination or disallowance of extra good time; and (3)

---

[9] Prohibited acts are categorized according to the severity of the conduct. Code level 100 offenses are deemed "Greatest Severity Level," code level 200 offenses are "High Severity Level," code level 300 offenses are "Moderate Severity Level," and code level 400 offenses are "Low Severity Level." The scope and severity of available sanctions increase as the severity level increases. *See* 28 C.F.R. § 541.3, Tables 1-2.

disallowance of between 50% and 75% (27-41 days) of good conduct time credit available for a year.  *See* 28 C.F.R. § 541.3, Table 1 – Prohibited Acts and Available Sanctions.

Here, the DHO imposed a disallowance of 41 days of good conduct time and a forfeiture of 46 days of non-vested good conduct time, as well as disciplinary segregation and loss of email and phone privileges.  These sanctions were well within the parameters available to the DHO.  Accordingly, Petitioner's argument is without merit.

A separate Order will follow.

Dated:  August 21, 2020.

_____
Lisa Pupo Lenihan
United States Magistrate Judge


Cc:    Chevaliee G. Robinson
       55482-060
       FCI Loretto
       P.O. Box 1000
       Cresson, PA  16630

       Chevaliee G. Robinson
       55482-060
       RRM Cincinnati
       36 E. 7th St., Suite 2107-A
       Cincinnati, OH  45202

       Counsel of record
       (Via CM/ECF electronic mail)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHEVALIEE G. ROBINSON, | ) | |
| | ) | Civil Action No. 18 – 235J |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| V, MOSER, *Warden @ F.C.I. Loretto,* | ) | |
| | ) | |
| Respondent. | ) | |

### ORDER

**AND NOW**, this 21st day of August, 2020, for the reasons set forth in the accompanying Memorandum Opinion,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, Petitioner has sixty (60) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:   Chevaliee G. Robinson
      55482-060
      FCI Loretto

P.O. Box 1000
Cresson, PA  16630

Chevaliee G. Robinson
55482-060
RRM Cincinnati
36 E. 7th St., Suite 2107-A
Cincinnati, OH  45202


Counsel of record
(Via CM/ECF electronic mail)